UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R.W. CHELSEA ENERGIE LTD; SYMBION POWER HOLDINGS LLC; AND SYMBION POWER LLC, | |
| Petitioners, | 24 Civ. 6790 (DEH) |
| v. | **OPINION AND ORDER** |
| VISION INDIAN OCEAN (V.I.O.) SA, | |
| Respondent. | |

DALE E. HO, United States District Judge:

Before the Court are two competing motions: one to vacate an arbitration award stemming from an alleged breach of an agreement regarding the rehabilitation of the Mandroseza Power Plant in Madagascar, and one to confirm it. After the Arbitrator found a breach of the Shareholders' Agreement, R.W. Chelsea Energie LTD ("Chelsea Energie"), Symbion Power Holdings LLC ("SPH"), and Symbion Power LLC ("SPLLC") (collectively, the "Petitioners") filed, in this Court, a Petition to Vacate the Arbitration Award, Pet. to Vacate ("Petition"), ECF No. 7, seeking to set aside the Arbitration Award in full, including its award of attorneys' fees and expenses at cost to Petitioners. *See* Pet'rs' Mem. of Law in Supp. of Pet. ("Mem. to Vacate"), ECF No. 5. In response, on November 14, 2024, Vision Indian Ocean (V.I.O.) SA ("Respondent") filed a Motion to Confirm the Arbitration Award, Resp't's Mot. to Confirm Award ("Mot. to Confirm"), ECF. No. 28, opposing the Petition and asking the Court to both (1) confirm the Arbitration Award and (2) award both pre-judgement and post-judgment interest. *See* Arbisman Decl. in Supp. of Mot. to Confirm ("Arbisman Decl."), ECF No. 29; Resp't's Mem. of Law in Supp. of Mot. to Confirm ("Mem. to Confirm"), ECF No. 30.

For the reasons set forth below, the Petition to vacate the Arbitration Award is **DENIED**, Respondent's motion to confirm the Arbitration Award is **GRANTED**, and the Arbitration Award is **CONFIRMED**.

## BACKGROUND

On November 8, 2016, Petitioners and Respondent entered a Shareholders' Agreement regarding the rehabilitation of the Mandroseza Power Plant (the "Plant") in Madagascar.  *See* Abrisman Decl., Ex. 1 (the "Arbitration Award" or "Award") ¶¶ 1-13, ECF No. 29-1.  However, "disputes arose between the parties regarding, *inter alia*, the parties' respective shareholding and fee entitlements and reciprocal allegations of mismanagement."  Pet. ¶ 13.  In 2020, Petitioners sought third-party resolution of the parties' disagreements and so commenced the underlying Arbitration in the International Centre of Dispute Resolution ("ICDR").  *See* Award ¶¶ 14-16. On July 10, 2024, the Arbitrator found[1] that Petitioners breached the Shareholders' Agreement for failing to transfer to Respondent 500 shares of Symbion Mandroseza Mauritius Limited ("SMML"), the parent company to the subsidiary Petitioners used to operate the Plant.  *Id.* ¶ 599. The Arbitrator also awarded Respondent arbitral administrative fees, attorneys' fees, and other legal expenses at cost to Petitioners.  *Id.* ¶ 626.

Petitioners now seek to vacate the Award on the grounds that the Arbitrator "issued the Award acting in excess of her authority," "deliberately disregarded applicable law," and "refused to hear pertinent and material evidence," thereby "depriving Petitioners of a full and fair hearing." *See* Pet'rs' Reply Mem. of Law in Supp. of Pet. ("Reply Mem. to Vacate") at 1-2, ECF No. 34. Petitioners also oppose Respondent's Motion to Confirm because enforcement of the Award, in

---

[1] On July 10, 2024, ICDR Arbitrator Tina M. Cicchetti (the "Arbitrator") issued the final Award, *see* Award ¶ 626, as modified on August 19, 2024, *see* Abrisman Decl., Ex. 2, ECF No. 29-2.

their view, would violate the public policy of the United States. *Id.* at 2. Respondent disagrees and instead asks the Court to confirm the Award "because there is no basis for vacatur." *See* Mem. to Confirm at 1-3; Resp't's Reply Mem. of Law in Supp. of Mot. to Confirm ("Reply Mem. to Confirm"), ECF No. 37.

## LEGAL STANDARD

When asked to review an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the Court "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).[2] A petition for vacatur, like the one before the Court, is "not an occasion for *de novo* review of an arbitral award." *Id.* at 71-72. Rather, "an award is presumed valid unless proved otherwise" "because the FAA establishes a strong presumption in favor of enforcing an arbitration award." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., Ltd.*, 57 F.4th 372, 382 (2d Cir. 2023).

"The FAA provides a streamlined process for a party seeking a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021). Under this process, the Court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. "Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013).

---

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

FAA Section 10(a) sets forth four narrow grounds for vacating an arbitration award. *See* 9 U.S.C. § 10(a)(1)-(4). And "[i]n addition to the four bases set forth in Section 10 of the FAA, an arbitration award may also be vacated based on the [Second Circuit's] doctrine of manifest disregard of the law." *In re Arb. Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., Ltd.*, 528 F. Supp. 2d 340, 354 (S.D.N.Y. 2007) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (explaining that the Supreme Court introduced "manifest disregard of the law" as grounds for vacatur in *Wilko v. Swan*, 346 U.S. 427 (1953))). The Court may vacate an arbitral award for manifest disregard of the law "only where a petitioner can demonstrate both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

Given the "stringent standards" applicable in reviewing an arbitration award, petitioners seeking vacatur "must clear a high hurdle" under either Section 10 of the FAA or the Second Circuit's doctrine of "manifest disregard of the law." *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 313 (S.D.N.Y. 2021); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *Merrill Lynch*, 808 F.2d at 933. The Court will "uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." *ReliaStar Life Ins. Co. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).

## DISCUSSION

### I.     The Petition to Vacate the Arbitration Award

Petitioners ask this Court to vacate the Arbitration Award in full, including the Arbitrator's awarding of attorneys' fees and other expenses to Respondent at cost to Petitioners. *See* Mem. to Vacate. Petitioners seek vacatur under the FAA, claiming that the Arbitrator (1) administered a

4

fundamentally unfair arbitration under Section 10(a)(3) and (2) exceeded her authority under Section 10(a)(4). *See id.* at 2-19; 9 U.S.C. § 10(a)(3)-(4).

### A.    Fairness of the Arbitration

Under Section 10(a)(3), 9 U.S.C. § 10(a)(3), vacatur is warranted if the Arbitrator engaged in misconduct that prejudiced a petitioner's rights. Such misconduct occurs where the Arbitrator refused "to hear evidence pertinent or material to the controversy," *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997), or if she totally "rejected[ed] consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute," *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287 (S.D.N.Y 2007). A Court's "review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp.*, 120 F.3d at 20.

According to Petitioners, the Arbitrator here engaged in three "obvious examples" of prejudicial misconduct requiring vacatur under Section 10(a)(3): (1) her "lack of consideration" of Petitioners' expert report on Mauritian anti-money laundering ("AML") laws, (2) her "failure to take into account evidence" that Respondent allegedly "oust[ed] Petitioners from management of the Plant" with "disastrous results for [the Plant's] operation," and (3) her "denial of Petitioners' claim" that Respondent supposedly pursued "abusive proceedings before Madagascar's Anti-Corruption Court" against Petitioners. Mem. to Vacate at 15.

The Court, however, cannot conclude that Petitioners' allegations render the Arbitration fundamentally unfair because the Arbitrator reviewed the evidence that Petitioners claim that she failed to consider. Indeed, the Petitioners essentially concede as much, by citing to the paragraphs in the Arbitrator's Award acknowledging each of these forms of evidence. *See id.* at 13 (Petitioners admitting that "the Arbitrator acknowledged [Petitioners' AML] expert witness evidence" and citing Award ¶ 369); *id.* at 15 (citing Award ¶ 337, discussing Petitioners' evidence regarding the Plant's management); *id.* (citing Award ¶ 458, discussing proceedings in Madagascar's Anti-

Corruption Court). Thus, while Petitioners claim that the Arbitrator improperly excluded material evidence, the Court agrees with Respondent that, "by [Petitioners'] own admission, the Arbitrator heard the evidence at issue." Mem. to Confirm at 17; *see* Award ¶¶ 337, 369, 458.

Because the Arbitrator clearly considered the evidence that Petitioners claim was improperly excluded, their argument is really an objection to how the Arbitrator weighed that evidence. But the Arbitrator's disagreement with Petitioners' claims based on its assessment of Petitioners' evidence does not amount to "refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "Where the losing party in an arbitration merely takes issue with the weight accorded to certain evidence actually considered by the [Arbitrator] or with the [Arbitrator's] rejection of arguments related to such evidence," it is "clear that vacatur is not appropriate under Section 10(a)(3)." *Interdigital Commc'ns Corp.*, 528 F. Supp. 2d at 352. Here, Petitioners' argument "that the [Arbitrator] failed to give the evidence the 'consideration it deserved' must be rejected" by the Court "as an improper 'attempt to probe the [Arbitrator's mind] as to how [she] reached [her] judgment.'" *Interdigital Commc'ns Corp.*, 528 F. Supp. 2d at 352 (quoting *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1512 (S.D.N.Y. 1987)).

"[T]he Second Circuit does not recognize *manifest disregard of the evidence* as proper grounds for vacating an arbitrator's award." *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (emphases added); *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F. App'x 45, 47 (2d Cir. 2018) (summary order) (declining to recognize manifest disregard of the evidence as a proper ground for vacatur). Petitioners may disagree with the Arbitrator's "evaluation of the evidence," but the Award "may not be vacated because of [Petitioner's] disagreements" with the Arbitrator's evaluations. *Data & Dev., Inc. v. InfoKall, Inc.*, 513 F. App'x 117, 118 (2d Cir. 2013) (summary order). Even if there was "strong evidence favoring [Petitioners]" in the underlying Arbitration, this Court "may not conduct a reassessment of the evidentiary record." *Wallace*, 378 F.3d at 193.

6

"The [A]rbitrator was entitled to weigh the evidence in making [her] factual findings," even if they disappoint Petitioners. *Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co.*, 838 F. App'x 649, 651 (2d Cir. 2021) (summary order). For the purposes of Section 10(a)(3), the Arbitration was not fundamentally unfair.

### B.     Scope of Authority

Petitioners also seek vacatur on the basis that the Arbitrator exceeded her authority under Section 10(a)(4) by adjudicating Respondent's counterclaims before Respondent paid the requisite filing fee in compliance with the AAA Rules, specifically AAA R-5.[3] *See* Mem. to Vacate at 11. The Court concludes that the failure to pay the filing fee does not provide a basis for vacatur.

Section 10(a)(4) provides for vacatur of the Award if the Arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to [Section 10(a)(4)] in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *Id.* at 85; *see also Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003). Thus, "in order to vacate an award [under Section 10(a)(4)], 'it is not enough for [P]etitioners to show that the panel committed an error—or even a serious error.'" *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 315 (S.D.N.Y. 2013) (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 671). Rather, the Court should deem the Arbitrator's decision "unenforceable" only if the Arbitrator "stray[ed] from interpretation and application of

---

[3] In the underlying Arbitration, both parties agreed that the Commercial Arbitration Rules (the "AAA Rules") of the American Arbitration Association (the "AAA") would be the "applicable arbitration rules," as the Arbitration was international and administered by the AAA's international division, the ICDR. *See* Award ¶ 20.

the agreement and effectively dispense[d] [her] own brand of industrial justice . . . ." *Stolt-Nielsen S.A.*, 559 U.S. at 671. If the Arbitrator "goes beyond that self-limiting agreement between consenting parties, [she] acts inherently without power, and an award ordered under such circumstances must be vacated." *Porzig*, 497 F.3d at 140.

Petitioners argue that AAA R-5 required the Arbitrator to reject Respondent's counterclaims because of the unpaid filing fee. *See* Mem. to Vacate at 11. The Court, however, concludes that the relevant rule is permissive, rather than mandatory. While AAA R-5(b) clearly specifies that "the applicable AAA Fee Schedule *must* be paid at the time of filing," the rule also states that, "if the deficiency is not cured . . . it *may* be returned to the filing party." AAA R-5(d) (emphases added). Considering the relevant AAA Rules together, AAA R-5(d) provides the AAA's permissive authority to reject claims that are filed without the requisite fee under AAA R-5(b). And here, the AAA did not reject the counterclaims despite having the permissive authority to do so. *See York Rsch. Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991) (noting that "the AAA's view of the meaning," interpretation, and application "of its rules is of considerable significance"). The Court need not decipher *why* the AAA opted not to reject VIO's counterclaims for nonpayment of the fee at the time of filing; all that matters here is that rejection of Respondent's counterclaims was *not* mandatory. Following the Second Circuit's guidance to apply Section 10(a)(4) narrowly, the Court agrees with Respondent that the AAA's delayed invoicing of Respondent did not bar the Arbitrator from adjudicating its counterclaims. The Court also finds that the AAA's filing fees are unconnected to the "intention of the parties to an arbitration," from which the Arbitrator generally derives her authority. *ReliaStar Life Ins. Co.*, 564 F.3d at 85. Thus, the Arbitrator neither contravened the parties' interests nor exceeded her authority under Section 10(a)(4) by adjudicating Respondent's counterclaims before payment of the AAA's fee.

C.    **Manifest Disregard of the Law**

Petitioners next assert that the Arbitrator manifestly disregarded the law when she concluded that Mauritian AML laws did not bar Petitioners from transferring the SMML shares to Respondent. *See* Mem. to Vacate at 12-14.  The Court disagrees.

The Second Circuit has explained that manifest disregard of the law is "is a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003).  This Court may only vacate an award for manifest disregard of the law (1) if the Arbitrator "knew of a governing legal principle yet refused to apply it or ignored it altogether," and (2) if the Arbitrator ignored legal principles that are "well-defined, explicit, and clearly applicable to the case." *Porzig*, 497 F. 3d at 139; *Wallace*, 378 F.3d at 189. "To vacate the Award," the Court "must find something beyond and different from a mere error in the law or failure on the part of the [Arbitrator] to understand or apply the law." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002).  Even if the Court disagrees with the Arbitrator's findings on the merits, it should confirm the Arbitration Award so long as there is a "barely colorable justification for the outcome reached." *Smarter Tools Inc.*, 57 F.4th at 383.

Petitioners maintain that Mauritian AML laws excused their failure to transfer the SMML shares to Respondent after Respondent replaced VIMA as a party to the Shareholders' Agreement because Petitioners lacked Know Your Customer ("KYC") documentation for Respondent.  Mem. to Vacate at 12-14; *see* Award ¶¶ 4, 366-70.  They argue that without this documentation, the AML laws prohibited transfer of the shares.  The Arbitrator, however, disagreed.  She found that Petitioners failed to "break the chain of causation" because Petitioners "did not take any steps to transfer shares" for "over a year" without any "explanation provided for [their] delay," and that Petitioners failed to establish that Respondent ignored their requests for KYC documentation and

failed to provide it. Award ¶¶ 548, 555. Put differently, the Arbitrator disagreed with Petitioners' *post hoc* justification for its failure to perform because Petitioners never even sought the KYC documentation for Respondent in the first place. While she "acknowledged [Petitioners' AML] expert witness evidence in the Award," Mem. to Vacate at 13 (citing Award ¶ 369), she found that Petitioners' obligations were unconditional notwithstanding the relevant AML laws. *See* Award ¶¶ 541-55. In other words, the Arbitrator considered the legal framework at issue and found that Mauritian AML laws did not excuse Petitioners from their duty under the Shareholders' Agreement. The Court cannot find this conclusion to be manifest disregard of the law.

Petitioners also fail to establish that the Arbitrator's findings regarding the AML laws constitutes her ignoring a legal principle that is "well-defined, explicit, and clearly applicable to the case." *Porzig*, 497 F. 3d at 139. The Arbitrator considered Petitioner's AML legal arguments, *see* Award ¶¶ 541-55, and Petitioners proffer no caselaw or other legal authority to suggest her conclusions about the AML laws constitute an "egregious impropriety." *Duferco Int'l Steel Trading*, 333 F.3d at 389. Accordingly, the Court finds that the Arbitrator offered, at the least, a "barely colorable justification for the outcome reached" based on the factual record and legal arguments before her and therefore declines Petitioners' request to vacate the Award for manifest disregard of the law. *Smarter Tools Inc.*, 57 F.4th at 383.

*    *    *

For the foregoing reasons, Petitioners have neither met their burden to overcome the FAA's "strong presumption in favor of enforcing an arbitration award," *id.* at 382, nor satisfied the Second Circuit's requirements for vacatur of the Award under the doctrine of manifest disregard of the law, *see Porzig*, 497 F. 3d at 139. Accordingly, the Petition to Vacate the Award is **DENIED**.

10

## II.    Confirmation of the Award

In opposition to Petitioners' request to vacate the Award, Respondent moves for confirmation of the Award.  *See* Mot. to Confirm.  Because the Award is an "arbitral award arising out of a [commercial] legal relationship" not "entirely between citizens of the United States," confirmation of the Award is subject to the New York Convention (the "Convention").  9 U.S.C. § 202.  Confirmation of the Award is also subject to the FAA because the Arbitration occurred in the United States. Award ¶ 20; *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932-34 (2d Cir. 1983) (finding the Convention and the FAA both authorize United States courts to enforce international awards entered in the United States); *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (same).

Under either the Convention or the FAA, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021); *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022).  "In the context of arbitral awards," there is "an extremely deferential standard of review." *Smarter Tools Inc.*, 57 F.4th at 378.  "The award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id*. at 379.  Petitioners, as the party opposing confirmation, carry "the heavy burden of showing that (1) 'the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators,' (2) 'the law was in fact improperly applied, leading to an erroneous outcome,' and (3) 'the arbitrator . . . knew of its existence, and its applicability to the problem" before her.  *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) (quoting *Duferco Int'l Steel Trading*, 333 F.3d at 390).

11

**A.    Article V(2)(b) of the New York Convention**[4]

Petitioners oppose Respondent's motion to confirm the Award under Article V(2)(b) of the New York Convention, claiming that confirmation of the Award would be contrary to the United States' public policy against money laundering. *See* Reply Mem. to Vacate at 20-24. They assert that the Arbitrator improperly "ascribed liability" to them for failing to transfer the SMML shares, effectively rewarding Respondent's noncompliance with Mauritian AML laws and penalizing Petitioners' compliance with them. *See id.* "This argument, however, falls outside the narrow public policy exception codified by Article V(2)(b)." *Commodities & Minerals Enter.*, 49 F.4th at 818. Article V(2)(b) "allows a court to refuse 'recognition or enforcement of the award if such recognition or enforcement would be contrary to the public policy of that country.'" *Commodities & Minerals Enter.*, 49 F.4th at 818 (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405, 411 (2d Cir. 2009)). However, Article V(2)(b) should be "construed very narrowly" to apply only to those situations "where enforcement would violate our most basic notions of morality and justice," *Telenor Mobile Commc'ns AS*, 584 F.3d at 411, and "where the contract as interpreted [by the Arbitrator] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *KT Corp. v. ABS Holdings, Ltd.*, 784 Fed. App'x 21, 26 (2d Cir. 2019) (summary order) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987)). "In reviewing an arbitral award for violations of

---

[4] Because the Court finds the parties' briefs sufficient to determine whether confirmation of the Award would violate the public policy of the United States, the Court declines to address whether Petitioners' expert report by Professor Berman is admissible. Put another way, nothing in the Berman Report would alter the Court's analysis on this point, rendering the question of its admissibility moot.

public policy," this Court "may not revisit or question the fact-finding or the reasoning which produced the award." *Commodities & Minerals Enter.*, 584 F.3d at 818.

As both the Award and the arbitral record make clear, the underlying arbitration concerned Petitioners' failure to perform its unconditional, contractual obligation to transfer the SMML shares to Respondent—nothing in the record or the Award centers money laundering. Moreover, the Court rejects Petitioners' view that the Award endorses Respondent's purported violation of Mauritian AML laws, a crime for which Respondent has not been charged or convicted. *See* Reply Mem. to Confirm at 4. In fact, it was Petitioners, not Respondent, who bore the burden under Mauritian AML laws to seek the requisite KYC documentation for Respondent. *See* Award ¶ 555. Having not timely done so, Petitioners, the Arbitrator found, could not rely on the absence of KYC documentation to justify their additional failure to transfer the SMML shares. *See id*. "In view of the strong United States policy favoring arbitration," the Court rejects Petitioners' arguments that their liability for damages raises public policy concerns under Article V(2)(b) of the Convention. *Agility Pub. Warehousing Co. K.S.C*, 495 F. App'x at 151 (citing *Telenor Mobile Commc'ns AS*, 584 F.3d at 410).

### B.    Denial of Vacatur and Confirmation of the Award

For the same reasons that vacatur is denied, Petitioners have also not met their "heavy burden" to defeat Respondent's motion to confirm the Award. *See Wells Fargo Advisors LLC*, 373 F. Supp. 3d at 424. "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *Shenzhen Lanteng Cyber Tech. Co. v. Amazon.com Servs., LLC*, No. 23 Civ. 991, 2023 WL 6276691 (S.D.N.Y. Sep. 26, 2023), *aff'd*, No. 23-7593, 2024 WL 4356307 (2d Cir. Oct. 1, 2024) (summary order). Accordingly, Respondent's Motion to Confirm the Arbitration Award is **GRANTED**, and the Arbitration Award is **CONFIRMED**.

## III.    Pre-Judgment and Post-Judgment Interest

Having granted Respondent's Motion to Confirm the Arbitration Award, the Court now turns to Respondent's requests for pre-judgement and post-judgement interest.

### A.    Pre-Judgement Interest

Respondent seeks pre-judgement interest at a rate of 10% per annum from the date of the Award, July 10, 2024, through entry of this Court's judgement, "consistent with the pre-Award rate awarded by the Arbitrator." Mem. to Confirm at 22 (citing Award ¶ 626). In actions to confirm arbitration awards, the Second Circuit notes its "presumption in favor of pre-judgment interest." *In re Arb. Between Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). "Whether to award pre-judgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Id.* at 153 (quoting *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975)). "Consistent with this general principle," the Second Circuit has "repeatedly recognized the power of district courts to award pre-judgment interest." *Id.*

In awarding pre-judgment interest, the Court considers four factors: "(1) the need to fully compensate the wronged party for actual damages suffered, (2) fairness and the relative equities of the award, (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." *Frommert v. Conkright*, 913 F.3d 101, 109 (2d Cir. 2019). Here, "[t]hese factors weigh in favor of [Respondent] because of the time value of money, and the benefit that [Respondent] could have derived from payments due had the funds been issued at the appropriate time and invested during the pendency of this proceeding." *Access Bio, Inc. v. Div. 5 Labs, Inc.*, No. 23 Civ. 4820, 2023 WL 7103305, at *3 (S.D.N.Y Oct. 27, 2023). Because "the same considerations that inform the Court's decision whether or not to award interest

14

at all should inform the Court's choice of interest rate," and because the Arbitrator already determined the 10% rate to be suitable, Award ¶ 626, the Court awards Respondent its requested pre-judgement interest at a rate of 10% per annum from the date of the Award, July 10, 2024, through entry of this Court's judgement. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000); *cf. Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 34 (S.D.N.Y. 2017) (concluding that district courts in the Second Circuit should provide pre-judgment interest only if the arbitrator is not silent on such interest in the award).

### B.    Post-Judgment Interest

Respondent also seeks post-judgment interest on the full judgment amount "from the date of the entry of the judgment through the date that Petitioners satisfy their payment obligations," "'at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System[,] for the calendar week preceding' the date of [this Court's] judgment." Mem. to Confirm at 22 (quoting 28 U.S.C. § 1961(a)). An "award of post-judgment interest is *mandatory* on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)) (emphasis added). Accordingly, the Court awards Respondent post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a) from the date of this Court's judgement through the date that Petitioners satisfy their payment obligations.

### CONCLUSION

For the reasons given above, the Petition to Vacate the Arbitration Award, ECF No. 7, is **DENIED**, Respondent's Motion to Confirm the Arbitration Award, ECF No. 28, is **GRANTED**, and, accordingly, the Arbitration Award is **CONFIRMED**. The Court further awards to Respondent pre-judgement and post-judgement interest, as requested by Respondent.

Respondents are directed to submit a proposed judgment within seven (7) days of the date of this Order.

SO ORDERED.

Dated:  December 1, 2025

New York, New York

 

 

DALE E. HO
United States District Judge